Our first case this morning is Doe v. United States, Mr. Vankirk. Good morning, Your Honor. Bob Vankirk with Williamson Connolly here on behalf of the Plaintiffs' Appellants. I'm joined at the counsel table by Paul Kunag, my co-counsel. I'd like to, if I may, reserve three minutes of counsel time for rebuttal. The Department of Justice contends in this case that this court in Doe v. United States held that a federal agency may unilaterally opt out of a mandatory federal pay statute by willfully refusing to pay any of its employees any overtime under any circumstances. In other words, an agency can exempt itself from the law. If they could not give a written authorization, is that true? Is that what you're characterizing as opting out, as simply not giving written authorizations? Well, opting out in this case is not just saying we don't want any overtime and we're not going to authorize it. In this case, it is telling people expressly, in every conceivable way, we want you to work overtime. We need you to work overtime. The department can't function without you working overtime, but simply refusing to sign a form. This is as if the Department of Justice passed a regulation saying, and this is, I think, essentially a department's position, we decline to abide by FIBA. We have one category of our employees, 9,000 attorneys, who we simply aren't going to pay for overtime ever. That is not the law. It cannot be the law. It can't be what DOE 1 did, but yet that's what the department tells you you did in DOE 1. And it can't be what the panel did in that case because that would be flatly inconsistent with FIBA. It would be flatly inconsistent with the existing precedent. It would be flatly inconsistent with Supreme Court precedent. But the court, our court, in I don't know what number of DOE it is, said to enter summary judgment in favor of the government. So what was it doing? Indeed, it did, Your Honor. And that's important to understand the procedural posture in which the case came up. DOE 1 was an interlocutory appeal of one aspect of one count in a three-count complaint. Now, when we take a look at the case Latrum, which we cited in our brief, there was a situation where the court directed the district court to reinstate the jury verdict. And the district court obliged. And it came back up, and the appellant said, we had all kinds of other arguments that the district court should have addressed. So when you moved for summary judgment with the court of claims, did you argue that you were entitled to 5546 holiday pay in the motion for summary judgment? No, that issue was not covered at all, Your Honor. Not one word in either party's briefs mentioned the word holiday. The statute was not discussed or cited. The regulations were not discussed or cited. And the panel in DOE 1 did not discuss any of those issues. Well, help me out here a little, Mr. Van Kirk. That came up on interlocutory appeal, right? Indeed, Your Honor. Meaning that we took the case understanding that we could resolve the whole case with a single issue. No, that's not true, Your Honor. That's not the way you understood it? Is that usually what we do with interlocutory appeal, is that we're going to make a significant advance in the case by taking it? There is no question that that was one of the principal issues, was whether you needed a writing. Because we won the case under the existing case law. The trial court held that, and the panel in DOE 1 recognized that under existing case law we prevailed. There's no question it was an important issue to address. In fact, we acknowledged in our filing on the motion for interlocutory appeal that this was an exceptional case. And we welcomed the court's review to clarify that issue, not to resolve the whole case. And I would point the court— Van Kirk, let me ask you, sort of to pick up, I think, on the question that Judge Prost asked. You're like an archer standing there with a quiver with a lot of arrows in it, and you're shooting at a target. What arrow did DOE 1 take away from you? DOE 1 took away the arrow that we did not need to show a writing by authorized officials in order to prevail. We could instead look to what the authorized officials did. Under the existing case law, it was clear that a writing was no longer required. The prior cases had held, DOE 1 said, based on the addition of a writing requirement, a reg that wasn't in the statute, that that reg was invalid. Now all you had to show was that an authorized official took some affirmative act to encourage you or tell you that it wanted you to work overtime. That argument is now gone. We cannot allege that on a facial challenge to the regulation that the regulation is invalid. The court said no. We look at this regulation, and contrary to our brethren in the Court of Claims, we conclude that this regulation is facially valid and consistent with the statute. Therefore, that regulation stands as a facial matter. I was around for DOE 1. You also briefed your alternative theory that the DOJ refused to set up a system for written approval. We certainly used those facts as a demonstration of why the regulation was facially invalid. We said this regulation requiring a writing can't stand facially because it could lead to this. Agencies could do this. We never said and never argued what we argued below, which is even if there is a requirement of writing, that we can look to lower-level officials because there is no system of delegation at the Department of Justice. In fact, if you note what the department cites in their brief, is a footnote in our brief. They say, oh, look it, they've argued this before. Yes, we alerted the court that that was an argument. There were no factual findings by the trial court. There were no legal findings on this alternative claim. We were, therefore, precluded from raising that as an alternative argument. But you briefed and made those factual commentaries, and then we directed the trial court to grant summary judgment for your opponent. On that issue, on the issue that was before the court on interlocutory appeal, this court had no jurisdiction to rule on issues that were not before the trial court. It is undisputed that we raised an alternative claim. If you look at our summary judgment brief, it is clearly demarcated as an alternative claim. We raised it. It is undisputed by the department. It was not addressed by the trial court. And by definition, under Yamaha and Stanley, that issue was not before this court on appeal. It could not have addressed it simply as a matter of procedure, as a matter of substance. It would make no sense for the court to have done that. Yes, we alerted the court to the alternative argument. And yes, we noted those facts for an entirely different purpose, which is to say, if you allow this regulation to be upheld facially, these are the results. And that's one reason why this regulation should be struck down in all its applications. And this court said no. We think that this regulation, as a general principle, as a facial matter, is consistent with the regulation. We accept that. And what we would like to do on remand is pursue our alternative argument to say, even if that is true, an agency can't, on the one hand, say, oh, writings are required. And on the other hand, provide an entire class of employees with absolutely no opportunity ever to get the writing. That's a hence I win, tails you lose proposition that this court, I cannot believe, and the court did not in any express terms address that question. This is a very narrow issue concerning whether a specific agency under a specific set of facts can rely on the writing requirement when it has absolutely refused to provide any means for employees to satisfy the writing requirement that this court has said is required. Let me turn, before you run out of time, to the holiday pay question. In order for the court of federal claims to have jurisdiction, you have to be asking for relief under a money mandating statute, correct? Correct. In your – looking back at your original complaint, and even though there's a comp that refers to 5546 and the holiday pay, I don't see anything in your prayer for relief that refers to that statutory provision or to holiday pay in any way, shape, or form. Two responses, Your Honor. Within the count itself, it says that we are entitled to relief under that provision, and we seek damages. So if you look at count three of the complaint, it does include that as well. It says that we are entitled to relief under this provision. Right, but don't you have to put it in the prayer for relief? You do not have to put it in the prayer for relief. There's actually no requirement that you put – even include a prayer for relief. It's specifically demarcated in that way. In fact, under the rules, under Rule 54C, you are entitled to all the relief to which – you get all the relief to which you are entitled regardless of whether or not you requested it. And that's in our reply brief in one of our footnotes. With regard to Doe 1, and the reason why this is consistent with Doe 1 is that it is entirely understandable and acceptable for the court to have said this regulation as a general matter is valid and enforceable. The court did not address the alternative claim, could not have addressed the alternative claim. And the decisions in Yamaha and Stanley make clear that that's true as a jurisdictional matter. And Latrim, Latrim is a very important case because it's very similar in that the federal circuit directed the district court to do something. The district court did what the federal circuit asked, which was to reinstate the jury verdict. And then the plaintiffs or the party in that case came back up and said, well, we had alternative arguments that we should have been entitled to pursue. And the federal circuit said very clearly, you're right. When we said reinstate the jury verdict, just as the court here said, enter summary judgment, we don't know everything that's going on in the trial court. We don't purport to be all-knowing. But in this case, you made a similar argument to this court in petition for rehearing, right? Well, the petition for rehearing, first of all, has no precedential value. It's entirely irrelevant to whether or not the issue was presented. But that is not what we presented on appeal. When we said this court should not have entered summary judgment on the count that was before the court. We never said it should not have entered summary judgment on all the counts. In fact, when it came back in the district court or the trial court, entered judgment for the government, we were completely surprised. We assumed that there would be additional proceedings to address our unresolved claims. Now, the government has said on a number of occasions that we never said that this was a partial summary judgment until it was all a fact and it was too late. Not true. In our petition for rehearing, I'm sorry, in our opposition to the motion for interlocutory appeal, before the appeal was taken, and this is in the joint appendix at page 323, we specifically stated that in the footnote 6, the court's decision to grant a partial summary judgment on liability concern only count 1 of the complaint. But maybe I'm misunderstanding. I thought if some of what you were arguing involved count 1, it's just for alternative arguments. So it's not – we're not talking – I mean, you've just sort of melded. Oh, I'm sorry. The separation of the count and then within that count, recognizing the court did rule on that count. It ruled on the aspect of that count that was before the court. The court can't rule on an alternative theory that wasn't ruled upon by the trial court. So your position is not only did the court not have the ability to rule on count other than the count that was before it, but you're saying even within that one count, it only had the ability to rule on particular questions that were before it with respect to that count? Absolutely. Stanley and Yamaha make clear that the only jurisdiction the Court of Appeals has is from the order certified on interlocutory appeal, not the narrow issue, but the order. And that order specifically did not address our alternative claims making these arguments. The court could not have entered the judgment. And what I also want to stress is that had it done so, I mean, the department's interpretation would put Doe 1 in conflict with existing circuit precedent. We note that this Adams decision, Adams v. United States, had an express alternative holding. It labeled them. It had four different holdings in the case, first through fourth. The first few dealt with the inducement concept, and there's no question that Doe 1 reverses Adams to the extent it relied on inducement. But then Adams went on, and it had an alternative holding, and it said in the alternative, under the facts of this case, it involved the Department of Justice. The Department of Justice regulation is invalid. It's so narrow in scope, it doesn't provide any opportunity to get the writings required by the regulation. So it declared that regulation and its application in those circumstances as applied to that case invalid. That holding survives Doe 1. The government says, oh, well, Doe 1 reversed Anderson and everything that ever cited Anderson. Not so. Holdings are reversed, not entire opinions. So that aspect of Adams that relied on Anderson in that agreed. There was no allegation in Anderson that there was a lack of a system of delegation, no opportunity to get a writing. So that holding of Adams stands. In fact, it was cited and repeated in several subsequent court of claims cases, including Bilella, which this court cited with approval. Why isn't even the alternative that you have argued for here passionately and seem to have been presented to us earlier, why isn't that really controlled by the holding that strict compliance with the regulation is required? You've got to have a writing, period, a written approval. Why isn't that still controlling? I have two answers, Your Honor. One, it is perfectly legitimate for the government to make that argument. It cannot be made in the first instance in opposition to a motion for reconsideration. If they want to file a motion for summary judgment on that issue and fully brief it, that's fine. But that's not what the trial did. I was here last time, so I remember these items were not off the table. We understood perfectly well what the government system was and had been and what attorneys' ethical obligations were and what they would continue to be. And we ruled that there would have to be strict compliance. Why doesn't that still control even your alternative theory? Because on an as-applied basis, what Adam says is that in that situation, if you allow an agency to insist on a writing and then never give a writing, set up no system under which employees can even ask for a writing. In this case, people did ask, I'll remind the court, and they were told you can't get it. In that situation, on an as-applied basis, that regulation is invalid not because it's inequitable or unjust but because it defeats the statute. It allows agencies to opt out. That principle of law was the law when Anderson was decided, and it's the law today. You can't have a regulation or an agency that adopts a policy or a regulation that defeats the statutory intent. FEPA was set up to pay people for wanted overtime, and there is no question on this record authorized officials testified. We wanted this overtime to be worked. Thank you, Mr. Banneker. Thank you. You've consumed your rebuttal time. What the court will do is restore the rebuttal time, and would you give Ms. Klein three additional minutes if she needs to use them? May it please the court, Elisa Klein for the United States. There were two—plaintiffs made two arguments on the last appeal. The first was that because of the government's conduct, imposing pressure to work extra hours, and explicitly because they allegedly didn't have a system in place to authorize overtime, they said the regulation should be disregarded. We shouldn't have to show a writing by authorized officials. That was from the Anderson line of cases, and this court said no, the Anderson line of cases, including Adams, which is their principal authority on this appeal, do not survive the Supreme Court's later decisions in Schweiker and Hansen. They had a second fallback argument, which is that look at the summary judgment record. We can show writings by an authorized official. This court scrutinized all the same writings that they're citing—there's no new record now—and said no, your writings do not satisfy the regulation. And this court made clear that under OPM v. Richmond and Schweiker v. Hansen, compensation cannot be awarded absent strict compliance with the requirements of the regulation. I mean, the arguments are almost verbatim, the arguments that were made on the last appeal. Just to be clear, as this court stressed, it was not countenancing an opt-out of the FIPA. What the court said was these plaintiffs at most may have had a right to refuse to work extra hours, and any adverse personnel action taken against them might well have been deemed invalid. But what they could not do was work extra hours and then, after the fact, demand money without the approval required by the regulations. Just on the holiday pay claim, the analysis is a little different, but not very different. Remember, the parties filed cross motions for summary judgment. After the trial court's summary judgment ruling on liability in favor of the plaintiffs, everybody understood that the only thing left was damages. That's what the Court of Federal Claims said in certifying the appeal. That's what the plaintiffs acknowledged even now in their reply brief, if you look at pages 25 to 26. They were prepared, they were fully prepared to cash in for their holiday hours on the basis of the summary judgment ruling. And that was the order that was certified for interlocutory review. There's no question that encompassed their holiday hours. And so they had moved for summary judgment on everything that was left in the case. The government had crossed moved for summary judgment on everything left in the case. The motion asked the trial court to dismiss the complaint. If they had an argument that actually their holiday pay claim was somehow different, somehow governed by a much more lenient standard, that was the moment to speak up, not post-judgment. You know, after an appeal and a rehearing petition and entry of final judgment, to try to say for the first time, actually, we have a new theory of holiday pay, and that should be treated differently. But again, even if the court somehow thinks there's room at this late stage for the plaintiffs to make their new argument, we've briefed the merits, and the new theory of holiday pay liability has no merit. It's been clear since the inception of the statute in 1945 that holiday hours, just like overtime hours, have to be formally assigned in order to be compensable. And, you know, it's no surprise that plaintiffs' whole approach from the start of the litigation until entry of final judgment was to combine their overtime and holiday hours for purposes of liability and to recognize the only differences would have been in the rates of pay. Because there's no case, not a single case, since 1945 in the statute's history to suggest that holiday hours are compensable under a different standard. So not even the Anderson line of cases, which is now superseded, suggested what their theory is that if an employee simply performs work on a holiday, they get money, even if no official, much less an authorized official, approved it, you know, much less in writing. Let me ask you, we do, though, have to address the AUO claim. Yes, correct. That claim is properly before this court because it was dismissed before the summary judgment ruling that went up on the last appeal. However, the plaintiff's reasoning is foreclosed by this court's reasoning in Doe 1. Because, again, they're saying, ignore the regulations, ignore what the Department of Justice orders. Did the court federal claim dismiss that for lack of jurisdiction? It did dismiss it for lack of jurisdiction. As we've said in our briefs, in this particular area, the jurisdictional and merits issues converge. And so whether you think of it as 12b1 or 12b6, the statute itself just says the head of an agency may authorize employees in certain positions for AUO claim. And then it goes on, who shall receive it. Right, but you need the first may. I mean, clearly it requires implementation by the head of the agency. Here, there was implementation by the head of the agency. Is it your position that if one were to disagree with the dismissal for lack of jurisdiction, that the court could then go on and address this on the merits? Oh, yes. This court has done that before. We cited at least one authority in our briefs. If the court believes it should have been 12b1 as opposed to 12b6, that's not a problem. It's still as a matter of law. Our point is there's no discovery would be relevant here because we have the Department of Justice order that implemented the AUO pay provision. It's in the joint appendix. And if you look at the joint appendix at page 44, the Department of Justice authorized seven specific positions as eligible for AUO pay, positions like border patrol agent. And in the appendix at page 37, and we quote this in our briefs, paragraph 7 sets out in the DOJ order the procedure to add to that list. And what it says is premium pay under this order may be paid to eligible employees assigned to the classes of positions listed in appendix 1 to this order. That's the list of seven positions, and nobody's contending that attorneys are on that list. And in the next sentence, the assistant attorney general for administration will authorize administratively uncontrollable overtime pay for additional classes of positions upon the request of a bureau director, which shows that the positions met the criteria set out in paragraph 6. And there's no reason for this court to decide whether or not the assistant attorney general could have added attorney, though I argue they could not, but because it's clear that the assistant attorney general never did add attorney, and as the regulation set out, it's the responsibility of the head of the agency or his delegate. Let me, just to make sure we don't run out of time, let me take you back to the holiday pay issue. And you said there you recognized, well, even if, you know, we briefed the merits, so even if we were to disagree with the court of claims, we could, you know, you ought to still prevail on the merits. But the court of claims, the court of federal claims never reached the merits. So if indeed we concluded that there was jurisdiction, wouldn't we have to send it back to the court of federal claims first before reaching the merits? No, I mean, for two reasons. First, in the court of claims, what it said is that, you know, basically inducement is not good enough for the reasons set out in Doe 1. So that really is the merits. And we've laid it out in more detail for this court, walking through the evolution of the statute. No dispute that in 1945, you had the explicit requirement of an assignment to duty. That was true in the 1946 version. Then in 1954, Congress— But on the question of whether or not we would need to send it back to the court of federal claims if they hadn't dealt with it, your answer is, in effect, they dealt with it? In effect, they dealt with it, and it's a pure question of law. So even if the court of federal claims hadn't dealt with it, it's fully briefed for this court. And I should just wrap up on the AUO pay point. The regulations that were issued by the Civil Service Commission, you know, back right after this AUO provision was adopted in 1954 and that have been in place ever since, say the head of the agency decides which positions are eligible for AUO pay, which employees are eligible for AUO pay. And these determinations may not be retroactive. Again, just as on the last appeal, to prevail, plaintiffs would have this court ignore the regulations and say, no, actually, courts decide, and they can do so retroactively. And, you know, then grant plaintiffs' prayer for a retroactive annual pay increase going back to 1992 of 10 to 25%. And that's flatly at odds with one of the two crucial purposes that FEPA had, as this court recognized, which was to protect the Treasury from unanticipated liabilities. This is exactly the case that would have been Congress's fear back in 1945 when the members of Congress were asking the Civil Service Commissioner for reassurance that they're not going to get hit with requests for supplemental appropriations and that agencies are not going to overspend their budgets. When the seven officers were designated as eligible for AUO pay, there was also a paragraph there that described in general employees in positions that have hours that are not controlled administratively. Why isn't that pretty clearly referring to precisely the kind of people that are attorneys at the Department of Justice? Well, two separate reasons. First, just that paragraph that Your Honor is referring to, there's a general statement of policy. It just tracks the language of the statute. Then there's paragraph seven, which sets out the procedure. And it's, here I've authorized these seven positions, and this is the procedure for, on a prospective basis, adding to the list. So even if you thought attorneys would satisfy those criteria, they can't be, you know, the court couldn't do it. But on the merits, basically as the Civil Service Commission regulations implementing these provisions and the current OPM regulations make clear, the idea is not to give AUO pay to office workers. The point is people who, like criminal investigators whose hours of work really cannot, like it's impossible to control administratively. The way the regulations put it is it has to be inherent in the nature of the job. So that's why there was all the focus on people who are, you know, meeting with informants or operating undercover. I mean, it's basically impossible to control their hours administratively because if someone's undercover, you can't say it's 5 o'clock, you know, and now you need to go home. But, and so the view of the agency is no, actually attorneys, even if the head of the agency decided it wanted to put them on a list, that really would not be consistent with the statute and the regulations that have been in place since the statute was enacted. Is this case a poster child for why this court should not grant interlocutory appeals? No. You're always going to get another case and another case saying you didn't deal with it all the first time? No, I mean, we were surprised that there was another appeal. Setting aside the AUO pay, which is legitimately, you know, couldn't have been addressed on the last appeal and could only be addressed now. But we thought everyone understood after the summary judgment ruling that all that was left was damages. Remember, again, the plaintiffs acknowledge that now and the trial court said that. Everyone knew that all of the liability rulings had been issued. So what's sort of extraordinary and like we've never seen before is a party that would come back reproducing almost verbatim arguments that had already been presented to the court on the basis of a record that had already been examined by the court and attempting to say re-evaluate this record, reconsider your other holding after an unsuccessful hearing petition. Let me ask you just one question. The Appendix 1 to the DOJ regulation, it lists this. I didn't see in there, what about DEA agents, FBI agents? Your Honor, I'm sorry. I just know what's in the Appendix 1. No, that's what I'm saying. I mean, you would think that they would be subject to AUO. Given the rationale you just set forth for this. I don't know the answer to that question or if there's a special provision that governs them. But, I'm sorry, I just don't know the answer. I know no one has ever proposed to add attorneys to the list. Well, the kind of theory is here that these are investigators. You can't leave a stakeout after eight hours, right? Correct. Is that the theory? Correct. And that was the theory. But somehow that must be accommodated somewhere in FBI regulation. That's what I'm assuming, yes. Thank you. Thank you very much, Your Honor. Let me pick up on the AUO issue. With all due respect to counsel, it is incorrect to say the Department has considered the issue of paying attorneys for AUO and decided it did not qualify. In fact, the discovery that we took after the motion was dismissed was granted, demonstrated. The Department looked at the issue, considered AUO, decided it applied, but decided it would cost too much money to comply with law. It didn't do it for that reason. So we have here a very easy situation under AUO because in most of the AUO cases you're going to see in the case law, people are arguing over whether or not they get AUO or another form of overtime. They're already being paid. They just want AUO because they think it's better for them in these circumstances. But can this court add anybody to the list? Absolutely, Your Honor. How can we add them to the list? Well, first of all, the list, as the Department acknowledges, is incomplete. And we also discovered in discovery that there are many other people who are receiving AUO who are not on that list. And so that order is not exclusive, and that's one of the reasons why it must be dismissed. How do they get on the list? There is various methods by which they never made it on the list. Why haven't you, by those various methods, also made it onto the list then? The Department did consider it, thought about it, and decided it would cost too much money to comply, Your Honor. That's the answer. In this case, though, it's a much easier situation because it's not the plaintiff seeking one or the other. Here, the attorneys did not get paid at all under any provisions. Under Section 5542, the law is clear that you must pay either time and a half, comp time, or AUO. In this situation where the Department says, oh, we don't have to pay the first two, by statute it becomes mandatory. It has to be paid because that is the only way in a situation where individuals are instructed to award AUO time that they can comply with the express dictates of FEPA. Let me address briefly on the holiday pay issue. There is no question that the holiday pay was never addressed. You can't cite to anything in the lower court record or in this court's opinion dealing with it. And the Department admits that when the district court went back to try and fix it, it used the wrong standard. They advanced below this regularly scheduled concept. That's what the trial court relied on. Now they give us a new standard, assigned to duty. We have no—that issue has never been briefed below. Absolutely must be addressed in the first instance by the trial court. And even if their standard were to apply, we put in evidence in the joint appendix at 619 through 622 stating that there are situations where attorneys are, in fact, required to work on holidays. So even if their standard applies, we have evidence to meet that standard, although we obviously disagree that that's the law. But that issue absolutely has to be returned. In closing, I think it's clear, and the Department has made it clear, that in order to affirm the trial court judgment, this court would have to conclude that Doe 1 endorsed an intentional evasion of FEPA. That is the simple, straightforward—if you allow this ruling to stand, it is a signal to all other agencies, not just the Department, that you don't have to comply with FEPA. Just never issue a writing. Tell people to work overtime. Authorize them to do it in every conceivable way. Just don't pay. Thank you, Mr. Vansker. Thank you, Your Honor.